**[J-46-2016] [MO: Donohue, J.]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**MIDDLE DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 66 MAP 2015 |
| | : | |
| Appellee | : | Appeal from the Order of the Superior |
| | : | Court at No. 386 MDA 2014 dated |
| | : | February 9, 2015 Reversing the Order |
| v. | : | of the Clinton Court of Common Pleas, |
| | : | Criminal Division, at No. CP-18-CR- |
| | : | 0000415-2013, dated February 26, |
| RAHIEM CARDEL FANT, | : | 2014. |
| | : | |
| Appellant | : | SUBMITTED:  March 16, 2016 |

## DISSENTING OPINION

**JUSTICE BAER**                              **DECIDED:  September 28, 2016**

I dissent from the majority's conclusion that communications between an inmate and his visitor at a correctional facility that are effectuated through the use of a telephone handset do not constitute a "telephone call" subject to the exception to the general prohibition against interception in Section 5704(14) of the Pennsylvania Wiretapping and Electronic Surveillance Control Act ("Wiretap Act"), 18 Pa.C.S. § 5704(14).   The majority reasons that the common sense meaning of "telephone" "requires both the dialing of a telephone number and the involvement of a telephone company in connecting a caller to his or her call recipient."   Slip. Op. at 18. Respectfully, I do not read the Wiretap Act as containing these requisites.   In my view, the plain and ordinary meaning of a telephone call encompasses what occurred here, *i.e.*, the utilization of a telephone to transmit communications from one party to another. Accordingly, I would affirm the order of the Superior Court, which reversed the trial court's order suppressing the challenged communications.

The record establishes that Appellant was charged with aggravated assault and related offenses after he allegedly stabbed an individual outside a bar in Clinton County. To demonstrate Appellant's consciousness of guilt, the Commonwealth sought to introduce two recorded conversations, both of which occurred while Appellant and his visitor were in the prison visitation room, separated by a glass partition, and speaking to each other on a telephone. The Commonwealth relied upon Section 5704(14) of the Wiretap Act, which allows officials of a "county correctional facility" to "intercept, record, monitor or divulge any telephone calls from or to an inmate in a facility," and states that such recordings "shall be divulged," *inter alia,* "in the prosecution or investigation of any crime." 18 Pa.C.S. § 5704(14).

Appellant sought suppression of the recorded conversations (and any evidence discovered as a result of such recordings) on the grounds that a visitor communication that occurred without the aid of a telephone company when the parties are face-to-face in the correctional facility, separated only by a glass partition, is not a telephone call, particularly where the inmate does not dial a number but, rather, dials his prison identification number to operate the telephone. The trial court agreed with Appellant and granted suppression.

The Superior Court reversed, finding that the trial court erred as a matter of law in concluding that the "apparatus that resembles a telephone" is not a telephone and that the challenged conversations are not subject to Section 5704(14)'s exception to the prohibition against interception. Commonwealth v. Fant, 109 A.3d 775, 781 (Pa. Super. 2015). It reasoned that the Wiretap Act does not distinguish between external and internal telephone calls from or to an inmate in a county correctional facility, and that the motion to suppress was based upon an unwarranted distinction between the two.

I would affirm the ruling of the Superior Court. I acknowledge that Appellant did not dial a telephone number, in the conventional sense, to call his visitor on the other side of the glass partition in the prison visitation room, but rather, inserted his prison identification number to operate the telephone. I further recognize that a common carrier telephone company was not involved in the placement of Appellant's call to his prison visitor, although the prison's internal telephone system was so involved. Contrary to the majority, however, I do not interpret Section 5704(14) as setting forth such requirements. That provision states only that "telephone calls from or to an inmate in a facility" may be intercepted and recorded by the correctional facility and then forwarded to law enforcement for the prosecution or investigation of any crime. It does not require the dialing of a telephone number or the involvement of a common carrier and does not in any way limit application of the Section 5704(14) exception to inmate calls made to recipients outside the prison.[1]

---

[1] In support of its conclusion that the participation of a telephone company is necessary for a telephone call to occur, the majority asserts, *inter alia*, that under the Wiretap Act, a telephone call is a "wire communication" and that a "wire communication" requires the involvement of a "telephone . . . company for hire as a communication common carrier." 18 Pa.C.S. § 5702. See Slip Op. at 14. Section 5702's definition of "wire communication" does not, however, mandate that a telephone company be involved, but rather describes a wire communication as aural transfers made through the use of facilities for the transmission of communication by wire or cable "including the use of such a connection in a switching station, furnished or operated by a telephone, telegraph or radio company for hire as a communication common carrier." 18 Pa.C.S. § 5702. Thus, a "wire communication" includes a communication facilitated by a telephone company, but does not require a telephone company's participation. Here, the communication was undoubtedly a wire communication using the prison's phone system. See Notes of Testimony, Feb. 25, 2014, at 16 (providing that the inmate phone company, as opposed to Verizon, records both visitor telephone calls and telephone calls to recipients outside the facility).

Additionally, the majority opines that because Section 5712 of the Wiretap Act ("Issuance of order and effect") provides that an order may direct the participation of a telephone company in an authorized interception, "the legislature understood the term 'telephone call,' ordinarily, to be the sort of communication that relies on the operation of (continued…)

Notably, the trial court used the phrase "apparatus that resembles a telephone" to describe the instrument that visitors and inmates use to converse through the glass partition. In my opinion, an instrument that resembles a telephone and acts as a telephone as it transmits the parties' wire communications, is a telephone. The fact that the inmate and visitor can see each other through the glass partition is of little relevance to our inquiry when considering that the parties could not hear each other absent use of the telephone provided.

The majority accurately recognizes that the Wiretap Act is to be strictly construed. However, "[t]he need for strict construction does not require that the words of a penal statute be given their narrowest possible meaning or that legislative intent be disregarded . . . nor does it override the more general principle that the words of a statute must be construed according to their common and approved usage." Commonwealth v. Booth, 766 A.2d 843, 846 (Pa. 2001) (explaining that the rule of strict construction only gives the offender the benefit of ambiguity and otherwise has no effect). Here, I do not believe the term "telephone call" is ambiguous, and thus, the Court need afford it only the fair import of the term.

Even if one were to find the phrase "telephone call" ambiguous and proceed to divine legislative intent, I would reach the same conclusion -- that the General Assembly did not intend to carve an exception that would protect wire communications taking place in a prison visitation room. The purpose of authorizing interception of the inmate's telephone calls is clear, i.e., to safeguard the orderly operation of the facility and the

a telephone company." Slip. Op. at 15. To the contrary, I do not view the General Assembly's authorization to direct a "provider of communication services" to cooperate with law enforcement authorities as a limitation on the ordinary meaning of a "telephone call." In fact here, as noted, all internal and external calls were monitored by or through the prison's phone system.

prosecution or investigation of any crime. See 18 Pa.C.S. § 5704(14)(i)(C) (providing that "[t]he contents of an intercepted and recorded telephone conversation shall be divulged only as is necessary to safeguard the orderly operation of the facility, in response to a court order or in the prosecution or investigation of any crime"). As the Commonwealth points out, if visitor telephone calls could not be monitored and recorded, inmates could freely use them to conspire with others to hide or destroy evidence, influence witnesses, smuggle contraband, or plot an escape.

Finally, even assuming the challenged recordings do not fall under the inmate telephone call exception to the general rule against interception, I do not believe that reinstatement of the trial court's suppression order is the appropriate remedy at this stage of the proceeding. In its appeal to the Superior Court, the Commonwealth raised two issues in addition to challenging the trial court's ruling that the conversations were not telephone calls. One of the additional issues was whether the trial court erred in granting suppression absent a finding that Appellant had an expectation of privacy in the correctional facility visitation calls.[2] Because the Superior Court found that the recordings at issue constituted inmate telephone calls that could be lawfully intercepted, the court declined to address the Commonwealth's additional issues. See Commonwealth v. Fant, 109 A.3d at 781 n.5 (noting that "[b]ecause our resolution of the Commonwealth's first issue enables us to dispose of the matter before us, it is not necessary to address separately the Commonwealth's remaining issues"). Thus, upon reversal of the Superior Court's ruling that the recordings constitute inmate telephone

---

[2] The third issue concerned whether the trial court erred in suppressing Appellant's personal belongings.

calls that were lawfully intercepted, a remand to that court is warranted to allow for disposition of the Commonwealth's remaining issues.[3]

Justice Mundy joins this dissenting opinion.

---

[3] In footnote twelve, the majority references the suppression court's conclusion that Appellant had an expectation of privacy and notes that the Commonwealth does not argue to the contrary. See Slip. Op. at 20 n.13. The Superior Court, however, has held that any expectation of privacy that an inmate has in a conversation taking place in a prison visitation room, when separated from the visitor by a glass partition and speaking with the visitor through a closed-circuit telephone system, is unreasonable. See Commonwealth v. Prisk, 13 A.3d 526, 532 (Pa. Super. 2011) (holding that it is unreasonable for an inmate to expect privacy in his conversations that take place in the prison visitation room as such an expectation of privacy is not one that society is prepared to recognize). Moreover, whether an individual has a reasonable expectation of privacy is a conclusion of law subject to plenary review by an appellate court. Commonwealth v. Duncan, 817 A.2d 455, 459 (Pa. 2003).